UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                     CASE NO.

**KANETHA ARUN CHAU**                                      **14-10059**
                                                           SECTION A
DEBTOR                                                     CHAPTER 11


**KANETHA ARUN CHAU**                                      ADVERSARY NO.
                                                           **16-1006**
PLAINTIFF

VERSUS

**CAPITAL ONE, N.A.**

DEFENDANT

### REASONS FOR DECISION

This matter is before the Court pursuant to a Motion for Summary Judgment (P-49) filed on

behalf of defendant, Capital One, N.A. ("Capital One").  Plaintiff, Kanetha Arun Chau ("Chau") has

filed an Opposition to Capital One's Motion for Summary Judgment (P-55) and Capitol One has

filed a Reply Memorandum (P-58).

Summary Judgment is proper when no genuine issues of material fact exist, and the moving

party is entitled to judgment as a matter  of law.  *Hassan v. Lubbock Independent School District*,

55 F.3d 1075, 1079 (5th Cir. 1995); Fed. R. Civ. Proc. 56(c); Bankruptcy Rule 7056(c).  The movant

bears the burden of proving "absence of genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).  "An issue is material if its resolution could affect

the outcome of the action."  *Weeks Marine, Inc. v. Fireman's Fund Insurance Co.*, 340 F.3d 233,

235 (5th Cir. 2003).

The following material facts are not in dispute.  On January 13, 2014, Chau filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana.  On January 22, 2014, Chau opened a Chapter 11 debtor-in-possession account at Capital One.  On August 7, 2015, Capital One placed an "All Funds Hold" on all bank accounts maintained at Capital One in which Chau had signatory authority.  On August 19, 2015, following an investigation, Capital One lifted the "All Funds Hold" on the pertinent bank accounts, issued checks for the funds contained in the accounts and closed the accounts.

Chau alleges that Capital One, by virtue of its "All Funds Hold," violated the automatic stay which went into place at the filing of her bankruptcy petition.  Specifically, Chau charges that Capital One's action in freezing her debtor-in-possession account was in violation of 11 U.S.C. § 362(a)(3) in that it was an act to obtain possession of property of the estate or to exercise control over property of the estate.  Capital One denies the charge and offers several supporting arguments, each of which will be addressed by this Court.

Capital One denies that it obtained possession or exercised control over property of the estate by virtue of its temporary freeze.  In support of its assertion, Capital One relies heavily upon *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) ("*Strumpf*").

In *Strumpf*, Citizens Bank of Maryland ("Citizens Bank"), withheld deposits in order to offset against debts owed the bank.  Because Strumpf was in bankruptcy, he alleged this violated the automatic stay imposed by 11 U.S.C. § 362(a).  The Court found no stay violation.  A crucial difference in the facts distinguishes this case.

2

When Strumpf filed for bankruptcy relief, he had an account with, and was in default on the remaining balance of a loan from Citizens Bank. The bank placed an "administrative hold" on only amounts sufficient to satisfy debtor's loan with the bank. After freezing the account, Citizens Bank filed a "Motion for Relief from Automatic Stay and for Setoff."

The *Strumpf* Court's decision was contingent on the fact that Citizens Bank was a creditor of debtor, recognizing that while "no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." The Court noted that Citizens Bank only refused to pay its debt while it sought relief under § 362(d) from the automatic stay. The bank's creditor status *vis-a-vis* the debtor was also significant by virtue of 11 U.S.C. § 542(b) which provides, in pertinent part, that an entity that owes a debt that is property of the estate shall pay such debt to the trustee (or on her order) "*except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*" *Strumpf*, 516 U.S. at 20, 116 S.Ct. at 289 (emphasis original). The Court reasoned that it would not give the automatic stay statute "an interpretation that would proscribe what § 542(b)'s 'except[ion]' and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt." *Id.*, 516 U.S. at 21, 116 S.Ct. at 290.

In this case, Capital One was not a creditor of Chau, was not entitled to a setoff with respect to property belonging to the estate and, at no point, sought to get relief from the automatic stay. Because of this crucial factual difference between the two cases, the Court is not persuaded that *Strumpf* stands for the proposition that Capital One did not violate the automatic stay when it placed an administrative hold on Chau's debtor-in-possession account. *See In re Mwangi*, 432 B.R. 812,

3

820 (B.A.P. 9th Cir. 2010) (court limited *Strumpf* to the narrow facts before the Court; "*Strumpf*

authorizes a bank to impose a temporary administrative hold to preserve setoff rights.").

Capital One next relies on *In re Calvin*, 329 B.R. 589 (Bankr. S.D. Tex. 2005) ("*Calvin*")

to support its proposition that its administrative hold was not violative of the automatic stay,

specifically 11 U.S.C. § 362(a)(3).  In that case, debtors had a checking account at Wells Fargo

Bank, N.A., ("Wells Fargo") prior to filing Chapter 7 bankruptcy and upon learning of the

bankruptcy filing, Wells Fargo put a freeze on their account.  Wells Fargo was not a creditor of the

debtors and, as such, had no right of setoff.  The debtors claimed an exemption on the funds and

demanded they be released, but Wells Fargo refused.

The court found that as property of the estate, the funds were payable to the Chapter 7

trustee, not the debtors.  Although the debtors had claimed them exempt, the period for objection

had not passed, therefore during the freeze the trustee, not the debtors, was the party with control.

This significant distinction was specifically recognized by the court in *In re Phillips*, 443

B.R. 63 (Bankr. M.D. N.C. 2010) and served as a basis for finding no violation of § 362(a)(3) when

the account held pre-petition funds.  The *Phillips* court reasoned:

> Faced with possible liability if the Bank Accounts were disbursed contrary to the
> provisions of § 542, Wells Fargo placed an administrative hold on the accounts ...
> and it immediately contacted the Trustee via facsimile seeking direction regarding
> the Bank Accounts.  Wells Fargo's administrative hold was [a] temporary refusal to
> pay the Debtors rather than the Trustee which served to both maintain the status quo
> and preserve property of the estate for the Trustee.  As such, Wells Fargo's actions
> did not constitute an exercise of control in violation of § 362(a)(3).

*Id.*, 443 B.R. at 66.

In this case, the bank account was under the control of the debtor, as the case was filed under

Chapter 11.  In addition, the account was opened post petition and nominated a DIP account.  This

4

signaled both debtor's control over and that demands against the account were necessarily for post petition charges. Ms. Chau was the Debtor in Possession with full rights and control over the property of the estate including her checking account. *See* 11 U.S.C. § 1107. Capital One had no concern of running afoul of § 542(b).[1]

A final decision on which Capital One relies is *In re Randolph Towers Cooperative, Inc.*, 458 B.R. 1 (Bankr D.C. 2011) ("Randolph Towers"). This case, too, is distinguishable. While *Randolph Towers* involved a Chapter 11 bankruptcy, the bank account at issue was a pre-petition rather than a post-petition debtor-in-possession account. Two days after filing for Chapter 11 bankruptcy relief, Wachovia Bank, N.A. ("Wachovia") sent debtor's counsel a letter stating in pertinent part:

> .... WACHOVIA is required by operation of section 542 of the Bankruptcy Code to act in good faith to prevent the payment of prepetition debts from a non-Debtor in Possession.
>
> As such, WACHOVIA has placed a debit restraint on any open deposit account(s) held by your client that was opened prior to the [bankruptcy] filing .... The restrain(s) will remain on your client's account(s) until WACHOVIA is provided a court order which allows your client continued use of the specific deposit account(s). If your client does not have such an order, WACHOVIA will issue a Cashier's Check payable to your client as Debtor in Possession or transfer funds to Debtor in Possession accounts opened with WACHOVIA.

*Randolph Towers*, 458 B.R. at 3.

Thus, much like the distinction noted in the Chapter 7 bankruptcy cases, the account in *Randolph Towers* was not a debtor-in-possession account in which the debtor had all of the rights

---

[1] Capital One cites numerous other cases for the proposition that its freeze of Chau's debtor-in-possession account did not constitute a violation of the automatic stay. A review reflects that these cases, like *Calvin* and *Phillips*, *supra*, involved Chapter 7 bankruptcies in which the bank accounts at issue were under the control of the debtors rather than the trustees. *See In re Sang Yul Lee*, 2011 WL 5452830 (Bankr. D. Ark. 2011); *In re Jernigan*, 475 B.R. 535 (Bankr. W.D. Va. 2012); *In re Bucchino*, 439 B.R. 761 (Bankr. D. N.M. 2010); *Wells Fargo Bank, N.A. v. Jiminez*, 406 B.R. 935 (D. N.M. 2008); *In re Zavala*, 444 B.R. 181 (Bankr. E.D. Cal. 2011); *In re Davis*, 244 B.R. 776 (Bankr. N.D. Ill. 2000).

5

and powers of a trustee.  Instead, it was a pre-petition account and Wachovia had the responsibility imposed by § 542(b) to avoid the payment of pre-petition debt from the account.  In this instance, Capital One had no such responsibility.

It is also worth noting that during the freeze of the account it is alleged that Capital One made no attempt to notify Chau or her counsel of the freeze nor did it request direction from this Court.  Capital One's conduct after freezing the account is a disputed material issue of fact necessary to the resolution of this case.

Capital One also argues that even if the hold placed on Chau's account constituted a violation of the automatic stay, Capital One is excepted from the automatic stay by virtue of the provisions of 11 U.S.C. § 362(b)(1).  Section 362(b)(1) excepts from the stay criminal proceedings against the debtor.

It is undisputed that no criminal proceedings have been instituted against Chau.  Instead, the hold was precipitated by Chau's writing of NSF checks over a period from February 3, 2015 through August 4, 2015.  According to Capital One, this raised a suspicion that Chau was engaged in a check-kiting scheme.  In response, Capital One implemented the administrative hold to investigate the matter.

"Exceptions to the automatic stay should be read narrowly."  *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 590 (9th Cir. 1993) (citations omitted).  This is especially true with respect to the exception afforded under § 362(b)(1).

> Although the exception in section 362(b)(1) is not by its terms limited to actions or proceedings by governmental units, it seems clear that this is what is intended.  Thus, the fact that an action simply alleges prior conduct of the debtor, which may also be a violation of a criminal statute, will not suffice to bring the action within the exception.  The provision excepts from the stay only a criminal action or proceeding.

6

3 *Collier on Bankruptcy* ¶ 362.05[1] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) (footnote

omitted).   Thus, the fact that Capital One might have suspected Chau of criminal conduct was

insufficient for purposes of excepting its action from the province of the automatic stay.

Capital One argues that even if its administrative hold was violative of the automatic stay,

Chau cannot obtain consequential damages as a result of the violation because she contracted away

her right to such damages.   Capital One's claim in this regard is based upon the following language

contained in the Capital One Rules Governing Deposit Accounts (the "Depositary Agreement"):

> **Liability**.   You agree that we shall not be liable for acting upon your instructions or
> failing to act upon your instructions when we reasonably believe that doing so would
> expose us to civil or criminal liability or conflict with industry standard banking
> practices.   You agree further, that except as otherwise provided by applicable law,
> IN NO EVENT SHALL WE BE LIABLE FOR INDIRECT, SPECIAL OR
> CONSEQUENTIAL DAMAGES OR FOR ATTORNEY'S FEES INCURRED BY
> YOU, REGARDLESS OF THE FORM OF THE ACTION, EVEN IF WE HAVE
> BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Pleading 49-4, pp. 28-29 (emphasis original).

Capital One also points to other paragraphs of the Depositary Agreement which allegedly

preclude Chau from seeking relief in connection with Capital One's violation of the automatic stay.

> **Adverse Claims**.   If we receive conflicting instructions with respect to your account,
> or notice of an adverse claim of ownership, right to control, or access to funds in
> your account, or notice that the funds in your account may have been obtained
> through fraudulent or criminal acts, you agree that if any such dispute exists, we may
> place a hold on the funds in your account and refuse to honor all withdrawal and
> transfer requests, including checks written on the account, until all appropriate
> parties provide us with joint specific instructions with respect to disposition of the
> funds.   We are not required to determine whether a dispute has merit.   If we elect to
> take any action(s) described herein, you agree that we shall not be liable to you for
> damages of any kind, and you agree to pay and reimburse us for our reasonable costs
> and expenses including, without limitation, attorneys' fees (including our in-house
> attorneys) and court costs from the funds in the account prior to any distribution.

Pleading 49-4, pp. 18-19.

**Closing an Account**.  We may close any account in our sole discretion at any time, for any reason or no reason and without notice to you.  For example, we may close your account if the account has a zero balance.  If we close your account, we will notify you of our action and send you a check for the collected balance in your account, less any amounts due to us for checks in process.  Capital One Bank is not liable for any damages or liabilities resulting from the termination of an account relationship.

Pleading 49-4, pp. 19-20.

Chau asserts that she never received or agreed to the Depositary Agreement and therefore, should not be bound by it.  It is undisputed, however, that Chau signed at least four (4) "Capital One, N.A. - Business New Account Information Card[s]" ("Information Cards").  Each of these Information Cards provided, in pertinent part:

BY OWNER'S AUTHORIZED REPRESENTATIVE(S) SIGNATURES(S) ABOVE, OWNER ACKNOWLEDGES AND AGREES TO THE FOLLOWING: OWNER ACKNOWLEDGES RECEIPT OF A COPY OF THE BANK'S "RULES GOVERNING DEPOSIT ACCOUNTS," DEPOSIT AVAILABILITY POLICY, ELECTRONIC FUND TRANSFERS AGREEMENT AND DISCLOSURE FOR PERSONAL AND BUSINESS ACCOUNTS, AND ALL APPLICABLE PRODUCT DISCLOSURES AND/OR TERMS AND CONDITIONS ASSOCIATED WITH THE ACCOUNT, AND AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS ACCOUNT AS DESCRIBED IN SAID DISCLOSURES, INCLUDING ANY AND ALL AMENDMENTS THERETO.

Pleading 49-4, pp. 1-4.

In the case of *Bailey v. Suntrust Bank*, 2010 WL 2010009 (E.D. La. 2010),  Eric Webb Bailey ("Bailey"), an account holder at SunTrust Bank, filed a lawsuit on behalf of himself and a potential class seeking damages against the bank in connection with the management of their bank accounts.  SunTrust Bank filed a motion to stay the action pending arbitration.  The bank's motion was based upon language contained in SunTrust Bank's Deposit Account Agreement which provided that any dispute with the bank "will be resolved in individual (not class or class-wide)

binding arbitration...." *Id*. at *1.

As in this case, no evidence was presented that Bailey had ever actually been presented with the SunTrust Bank's arbitration clause. Bailey contended that he never signed an arbitration agreement and, in fact, the arbitration clause was not part of the Deposit Account Agreement in existence when Bailey opened his account. Instead, the Deposit Account Agreement was amended at a later date and the arbitration clause was included in the amended version. However, the original version of the agreement, presumably provided to Bailey when he opened his account, stated "that SunTrust Bank can change the Deposit Account Agreement at any time without notice, that Bailey was required to abide by the changes in the Deposit Account Agreement, and that copies of the updated versions ... could be obtained at any SunTrust Bank office." *Id*. at *4.

Despite Bailey's contention that he had no knowledge of the arbitration agreement, much like Chau's claim that she had no knowledge of the Depositary Agreement, the district court found the agreement binding. The district court, in pertinent part, reasoned:

> Bailey's signature card is a written contract between him and SunTrust Bank. *See Amico Centennial Ins. Agency, Inc. v. First Nat'l Bank of St. Bernard Parish*, 543 So.2d 527, 528 (La. Ct. App. 1989). "As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto." *Russellville Steel Co., Inc. v. A & R Excavating, Inc.*, 624 So.2d 11, 13 (La. Ct. App. 1993) (citing *Action Finance Corp. v. Nichols*, 180 So.2d 81 (La. Ct. App. 1965)).

*Bailey*, 2010 WL 2010009 at *3.

Another similarity between the instant matter and *Bailey* is the fact that Bailey, along with Chau, argued that he should not be bound by the Deposit Account Agreement because it was adhesionary. In addressing Bailey's argument, the district court relied on applicable state law, the same law relied upon by Chau, which explains that the key to determining whether or not a contract is adhesionary is a determination of whether or not consent was lacking.

9

> "[T]he real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms. *Aguillard v. Auction Management Corp.*, 908 So.2d 1, 10 (La. 2005). "[I]f [the standard form contract] does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion." *Id.* at 11. The party seeking to invalidate the contract as adhesionary bears the burden of demonstrating that the non-drafting party did not consent to the terms or his consent was vitiated by error. *Id.* at 10.

*Bailey*, 2010 WL 2010009 at *4.

Nevertheless, whether or not Chau consented to the terms of the Depositary Agreement, in particular, the forfeiture of her right to recover consequential damages or that her consent was vitiated by error is an issue of material fact as is any claim by her based on adhesion.

In addition, a significant difference between the instant case and *Bailey* is Chau's allegation that Capital One acted in bad faith, thereby vitiating its various disclaimers of liability. Louisiana Civil Code Article 1997 provides that "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform."

The allegation of bad faith arises from Capital One's violation of enumerated paragraph seven (7) of the Depository Agreement entered into with the U.S. Trustee's Office for Region 5, Judicial Districts of Louisiana and Mississippi. Paragraph seven (7) provides:

> Depository [i.e., Capital One] agrees to designate an officer or employee who shall be available during regular business hours and can be contacted by the UST [United States Trustee], Trustee, or Debtor in Possession. Depository agrees to notify the account owner and UST in writing any time the designation changes.

Pleading 55-2, p. 4.

Chau has alleged that Capital One failed to designate an officer or employee to Chau, the Debtor in Possession, refused to discuss Chau's debtor-in-possession account or the reason the account was seized. When Chau questioned Capital One regarding the administrative hold, she was

10

told to contact the "fraud department."  When Chau's bankruptcy counsel followed the bank's instruction, no one in the fraud department would provide him with information regarding any of the frozen accounts.  Whether or not Capital One's conduct rises to the level of bad faith or exacerbated the financial repercussions of Chau's position is a material disputed fact.

Accordingly, it is ordered that the motion for summary judgment filed on behalf of Capital One is DENIED.

New Orleans, Louisiana, November 22, 2017.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge